2009 UT App 231

STATE of Utah, Plaintiff and Appellee,

v.

Charles MOA, Defendant and Appellant.

No. 20070940–CA.

Court of Appeals of Utah.

Aug. 27, 2009.

Lori J. Seppi, Salt Lake City, for Appellant.

Mark L. Shurtleff, Atty. Gen., and Ryan D. Tenney, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before GREENWOOD, P.J., ORME and DAVIS, JJ.

## OPINION

GREENWOOD, Presiding Judge:

¶ 1 This appeal encompasses two consolidated cases stemming from separate drive-by shootings. In case no. 031903971 (case # 3971), Charles Moa was charged with three counts of aggravated assault. Moa entered a no-contest plea to one count of discharging a firearm toward a building but subsequently moved to withdraw his plea. The trial court denied the motion and sentenced Moa to a prison term of three to five years. Moa appeals the trial court's denial of his motion,

alleging violations of both rule 11 of the Utah Rules of Criminal Procedure and constitutional requirements, and essentially arguing that his plea was not entered knowingly and voluntarily because he was not informed of the nature and elements of the crime to which he pled.

¶ 2 In case no. 071904352 (case # 4352), Moa was charged with seven counts of discharging a firearm toward a building, one count of failure to respond to an officer's signal to stop, one count of aggravated assault, and one count of failure to stop. Moa pleaded guilty to one count of discharging a firearm from a vehicle, failure to respond to an officer's signal to stop, and aggravated assault. The trial court sentenced Moa to three to five years on the discharge of a firearm charge, zero to five years on the failure to respond to an officer's signal charge, and zero to five years on the aggravated assault charge. All of the sentences from this case and case # 3971 were to run consecutively. Moa appeals the trial court's imposition of consecutive, rather than concurrent, sentences. We affirm in both cases.

## STANDARD OF REVIEW

¶ 3 Moa raises two issues, one pertaining to each case. First, he argues that the trial court abused its discretion in case # 3971 by denying his motion to withdraw his no-contest plea. "We review a trial court's denial of a motion to withdraw a guilty plea under an abuse of discretion standard." *State v. Holland*, 921 P.2d 430, 433 (Utah 1996) (internal quotation marks omitted). However, "[w]hether the trial court strictly complied with rule 11 is a question of law, reviewed for correctness.... The trial court's underlying factual findings are reviewed for clear error." *State v. Visser*, 2000 UT 88, ¶ 9, 22 P.3d 1242 (citation omitted). Moa concedes that this issue was not preserved and asks us to consider it under either the plain error doctrine or the ineffective assistance of counsel doctrine. Under the plain error doctrine, we reverse where the defendant "establish[es] that (i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a

reasonable likelihood of a more favorable outcome for the appellant." *State v. Dean*, 2004 UT 63, ¶ 15, 95 P.3d 276 (internal quotation marks omitted). Alternatively, we review an ineffective assistance of counsel claim as a matter of law. *See State v. Snyder*, 860 P.2d 351, 354 (Utah Ct.App.1993).

> In order for a defendant's Sixth Amendment challenge to succeed, the defendant "must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

*Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

¶ 4 Second, Moa argues that the trial court abused its discretion in case # 4352 by imposing consecutive rather than concurrent sentences. "We afford the trial court wide latitude in sentencing and, generally, will reverse a trial court's sentencing decision only if it is an abuse of the judge's discretion." *State v. Bluff*, 2002 UT 66, ¶ 66, 52 P.3d 1210 (internal quotation marks omitted).

## ANALYSIS

### I. Withdrawal of No–Contest Plea

¶ 5 We first consider whether the trial court abused its discretion in denying Moa's motion to withdraw his no-contest plea in case # 3971.

¶ 6 On April 4, 2003, Moa and two other individuals allegedly discharged firearms toward three people in a business parking lot. Moa was charged with three counts of aggravated assault, a second degree felony. Moa was appointed an attorney, who withdrew because of a conflict and new counsel was appointed. On the day of his preliminary hearing, Moa alleged ineffective assistance of counsel and moved to have yet another attorney appointed. The trial

court granted the motion, continued the hearing, and appointed James Valdez. Weeks later, Valdez also requested permission to withdraw on the basis of a conflict and moved to continue the preliminary hearing. The trial court granted this motion and appointed Manny Garcia. While represented by Garcia, Moa entered a no-contest guilty plea to one count of discharging a firearm toward a building, a third degree felony.

¶ 7 At the plea hearing, the State clarified the written plea agreement, stating that it would dismiss the three aggravated assault charges, that Moa would be released that day, and that it would recommend probation unless Moa failed to obtain a presentence report or committed any further crimes prior to sentencing. The trial court made a few changes to the information by interlineation and the State agreed to submit an amended information reflecting the new charge, which it did two and a half weeks later.

¶ 8 During the plea colloquy, the attorneys, trial court, and Moa discussed Moa's charges. When asked for the factual predicate for the charge, defense counsel stated "Judge, apparently on or about the 4th of April 2003 Mr. Moa, as a party, intentionally and knowingly discharged a firearm toward a building in Salt Lake County, State of Utah. That's what is written down here as the element and the facts, Your Honor." Although neither counsel readily recalled the code section under which Moa was being charged, the plea affidavit states: "76–10–508 On or about 4/4/2003 defendant as a party intentionally and knowingly discharged a firearm from a vehicle toward [building] in [Salt Lake] County State of Utah." (strikeout in original).

¶ 9 The trial court repeatedly asked Moa if he understood the charges and the procedure. Moa indicated that he did. Also, defense counsel Garcia explained that prior counsel Valdez "had already arranged this and I just reiterated it all and have gone over it again with [Moa] and I believe that this is our understanding of the deal." Moa agreed.

¶ 10 At the time Moa allegedly committed the crime, Utah Code section 76–10–508 provided that it was a class B misdemeanor for a person to "discharge any kind of dangerous weapon or firearm ... within 600 feet of ... a house, dwelling, or any other building." Utah Code Ann. § 76–10–508(1)(a)(vii)(A), (2) (2003) (amended 2008). Section 76–10–508 further provided that it was a third degree felony with a minimum sentence of three years if the actor discharged the firearm *"with intent to intimidate or harass another."* *Id.* § 76–10–508(2)(b) (emphasis added).[1] The trial court mistakenly informed Moa that a third degree felony was punishable by zero to five years in the state prison, but the attorneys corrected the court, and the court then correctly told Moa that the offense was punishable by three to five years. Neither the colloquy nor the plea affidavit referred to a specific subsection of 76–10–508. Likewise, they did not include subsection (2)(b)'s language, "with intent to intimidate or harass another." The trial court also told Moa that if he were convicted of the three original second-degree felony charges of aggravated assault, and the sentences were ordered to run consecutively, he "could be looking at 45 years." The trial court accepted Moa's no-contest plea, ordered a pre-sentence investigation (PSI) report, and ordered Moa released to Pretrial Services.

¶ 11 On May 31, 2007, the State moved to revoke Moa's pretrial release because Moa did not report to Pretrial Services. On June 9, 2007, the events leading to case # 4352 occurred.

¶ 12 On June 15 and 22, 2007, Moa filed pro se motions to withdraw his no-contest plea based on different issues than those now raised on appeal. Subsequently, Garcia moved to withdraw and was replaced with Moa's fifth attorney, Robin Ljungberg. At the hearing on his motion to withdraw his guilty plea, Moa stipulated there was full compliance with the provisions of rule 11 of the Utah Rules of Criminal Procedure. At that hearing, Garcia testified that Valdez had prepared the plea affidavit and described

---

1. Section 76–10–508 was amended in 2008. The quoted language is now found in Utah Code section 76–10–508.1, which outlines the penalties for a felony discharge of a firearm. *See* Utah Code Ann. § 76–10–508.1 (2008).

166

why the changes were made. The trial court denied Moa's motion to withdraw his guilty plea. The trial court's written Findings of Fact included:

> 1. The parties stipulated that the plea taken on May 25, 2007 was taken in compliance with Rule 11 of the Utah Rules of Criminal Procedure.
>
> . . . .
>
> 3. The court finds Mr. Garcia to be a credible witness.
>
> 4. The court finds that based on Mr. Moa's physical demeanor and his responsiveness to questions, Mr. Moa was aware of what was happening during the proceedings.
>
> 5. The [c]ourt finds that all involved parties took measures to ensure that Mr. Moa understood what was occurring, especially in light of the numerous changes in attorneys that Mr. Moa had on this case.

The trial court concluded that "[t]he defendant's plea was voluntarily, knowingly, and intelligently made."

¶ 13 Moa now appeals the trial court's denial of his motion to withdraw his no-contest plea, asserting that the trial court violated rule 11 of the Utah Rules of Criminal Procedure by failing to ensure that Moa understood all the elements of the crime, specifically the penalty-enhancing element of "intent to intimidate or harass another." Rule 11 describes necessary findings a trial court must make prior to accepting a guilty plea. *See* Utah R.Crim. P. 11. Included in rule 11 are the requirements that the court find that (1) "the defendant understands the nature and elements of the offense to which the plea is entered" and (2) "there is a factual basis for the plea." *Id.* R. 11(e)(4)(A)-(B). However, strict compliance with rule 11 is not constitutionally required. *See Salazar v. Warden,* 852 P.2d 988, 991–92 (Utah 1993) (discussing strict compliance and concluding "a failure to comply with Utah's rule 11 in taking a guilty plea does not in itself amount to a violation of a defendant's rights under either the Utah or the United States Consti-

tution").[2] "[T]he substantive goal of rule 11 is to ensure that defendants know of their rights and thereby understand the basic consequences of their decision to plead guilty. That goal should not be overshadowed or undermined by formalistic ritual." *State v. Visser,* 2000 UT 88, ¶ 11, 22 P.3d 1242. "[A] [defendant] must show more than a violation of the prophylactic provisions of rule 11; he or she must show that the guilty plea was in fact not knowing and voluntary." *Salazar,* 852 P.2d at 992; *see also* Utah R.Crim. P. 11(e).

¶ 14 We thus review Moa's no-contest plea to determine whether the trial court abused its discretion in concluding that Moa's plea was knowing and voluntary. In order for a plea to be "truly voluntary," "the trial court must determine that the defendant possesses an understanding of the law in relation to the facts." *State v. Thurman,* 911 P.2d 371, 373 (Utah 1996) (internal quotation marks omitted). "[A] court considering such a claim is not limited to the record of the plea hearing but may look at the surrounding facts and circumstances, including the information the [defendant] received from his or her attorneys before entering the plea." *Salazar,* 852 P.2d at 992; *see also Visser,* 2000 UT 88, ¶ 13, 22 P.3d 1242 (concluding that the record reflected that rule 11 requirements were fulfilled). Furthermore, because we consider Moa's appeal under the plain error standard, we must determine whether "(1) an error exists; (2) the error should have been obvious to the trial court; and (3) the error is harmful." *State v. Dean,* 2004 UT 63, ¶ 15, 95 P.3d 276.

¶ 15 We agree with Moa that an error occurred because of an internal inconsistency in both the colloquy and the plea affidavit. The full elements of the third-degree felony to which Moa was pleading were not referenced or clarified anywhere in the colloquy or plea statement. Furthermore, the elements and factual basis in the plea affidavit and the colloquy were those of a class B misdemeanor, not a felony. Moa's statement

**2.** Although *Salazar* involved a post-conviction challenge, its holding appears to have equal application in a direct appeal of denial of a motion to withdraw a guilty or no contest plea. *See In re K.M.,* 2007 UT 93, ¶¶ 22–23, 173 P.3d 1279; *State v. Marshall,* 2003 UT App 381, ¶ 21 n. 9, 81 P.3d 775.

that his counsel had told him about the elements of the crime does not obviate this error because there is no evidence that these discussions included the intent to intimidate or harass another. Further, the error should have been obvious to both the court and counsel because the statute was unambiguous.

¶ 16 The question of whether the error was harmful is more difficult. Under plain error analysis, if obvious and plain error is established, a defendant must demonstrate that the error was "of such a magnitude that there is a reasonable likelihood of a more favorable outcome for the defendant." *Id.* ¶ 22 (internal quotation marks omitted). To wit, a defendant must show "that 'but for' the alleged error, he or she would not have pled guilty." *Id.* In reviewing Moa's motion to withdraw, we "consider the facts and circumstances in which the plea was taken." *Id.* ¶ 12; *see also Visser*, 2000 UT 88, ¶ 13, 22 P.3d 1242 (involving a mid-trial plea). While it is true that the elements of the crime were erroneously stated, both the plea colloquy and plea affidavit support the conclusion that Moa clearly knew his plea was to a felony and also knew the potential sentence was three to five years. Moa admitted to firing a gun at a building intentionally and knowingly, though he never admitted to an intention to harass or intimidate. Further, Garcia had approached the prosecution and negotiated an agreement that the underlying sentence would be changed from zero-to-five years to three-to-five years, and Moa would agree to a PSI before sentencing in exchange for the State's agreement that Moa could be released that day and that it would not file any "related charges." Moa was particularly anxious that he did not have to be incarcerated and would be released immediately. Garcia discussed these changes with Moa and Moa agreed to them.

¶ 17 We recognize that a defendant's understanding and knowledge of the elements of the crime to which he is pleading no contest is an important part of the process. Nevertheless, we conclude that Moa has not established that he would have refused to enter his plea if he had been informed correctly of the elements and thus has not shown that the error "actually affected the outcome of the plea process," *Dean*, 2004 UT 63, ¶ 23, 95 P.3d 276 (internal quotation marks omitted), which is the essence of his burden when proceeding on a theory of plain error.[3] Therefore, Moa is not entitled to relief under the plain error doctrine.[4]

## II. Consecutive Rather Than Concurrent Sentences

¶ 18 Next, Moa argues that the trial court abused its discretion by ordering the sentences in case # 4352 and case # 3971 to run consecutively. In determining whether sentences should run consecutively or concurrently, "the court shall consider the gravity and circumstances of the offenses, the number of victims, and the history, character, and rehabilitative needs of the defendant." Utah Code Ann. § 76–3–401(2) (2008). We review the trial court's decision for an abuse of discretion, which "results when the judge fails to consider all legally relevant factors or if the sentence imposed is clearly excessive." *State v. McCovey*, 803 P.2d 1234, 1235 (Utah 1990) (footnotes and internal quotation marks omitted).

¶ 19 Moa argues that the trial court's decision to impose consecutive sentences was an abuse of discretion. Specifically, Moa challenges two statements made by the prosecutor during the sentencing hearing, arguing that the trial court may have relied on those statements. First, Moa complains that the trial court improperly relied on the prosecutor's statement that the "whole neighbor-

---

3. We recently released our opinion in *State v. Alexander*, 2009 UT App 188, 214 P.3d 889, which also addresses the trial court's failure to apprise a defendant of the elements of his claim. *See id.* ¶ 1. That case is distinguishable because Alexander's claim was not advanced under the plain error doctrine. Here, Moa must establish that the trial court's error was not harmless. Alexander, on the other hand, simply had to

demonstrate that the plea was not knowing and voluntary. *See id.* ¶ 14.

4. Given our disposition on this issue, we need not address Moa's ineffective assistance of counsel argument because it also requires a showing of prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

hood" was a victim of the offenses. Moa also complains that the prosecutor referenced earlier incidents for which Moa was not charged. Specifically, during the sentencing hearing, the prosecutor stated:

> [T]here was a murder in front of that home in February. One of the bullets went into the ... home and hit a young girl in the head. . . . It didn't kill her, luckily. [Moa] gets released from custody. Within two days, there's a shooting again at this home. Neighbors come out, there's some witnesses, not enough to put together a case but police are looking for [Moa]. And then in a few more days, there's another shooting.

Moa asserts that the trial court erred in considering these statements because it failed to limit its consideration to the actual number of victims and there is no indication in the record that he was charged with or convicted of the incidents described.

¶ 20 Moa's argument fails because the record does not support his claim that the trial court actually relied on either of the prosecutor's statements. "[T]he burden is on [the defendant] to show that the trial court did not properly consider all the factors in section 76–3–401(4)." *State v. Helms*, 2002 UT 12, ¶ 16, 40 P.3d 626. Moa has not shown that the trial court actually relied on these statements; indeed, the trial court said little about which statutory factors it was considering, and it is not required to. *See State v. Valdez*, 2008 UT App 329, ¶ 8, 194 P.3d 195 (stating trial court need not state to what extent it considered each of the statutory factors at the sentencing hearing). The trial court said only that it considered Moa "an extreme danger to any community that he happens to be in." Moa speculates that this statement is connected to the prosecutor's statements, but in fact, the record does not support this speculation. To the contrary, the record supports the trial court's assessment, and the trial court acted within its discretion by weighing each individual factor as it chose. *See State v. Russell*, 791 P.2d 188, 192 (Utah 1990) ("One factor in mitigation or aggravation may weigh more than several factors on the opposite [side of the] scale."). Again, Moa has not presented evidence that would indicate that the trial court abused its discretion in weighing the given factors. Accordingly, we conclude the trial court did not abuse its discretion in ordering Moa's sentences to run consecutively rather than concurrently.

### CONCLUSION

¶ 21 We conclude that Moa has not demonstrated any prejudicial plain error regarding the trial court's acceptance of Moa's no-contest plea: Moa has demonstrated that there was error in the taking of his no-contest plea, and that the error was obvious, but he has failed to show that the error was harmful. Thus, Moa is not entitled to relief under the plain error doctrine. We also conclude that the trial court did not abuse its discretion in running Moa's sentences consecutively rather than concurrently. We affirm.

¶ 22 WE CONCUR: GREGORY K. ORME and JAMES Z. DAVIS, Judges.