IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| State of Utah, | ) | MEMORANDUM DECISION |
| | ) | |
| Plaintiff and Appellee, | ) | Case No. 20100004-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (June 28, 2012) |
| Scott C. Wadsworth, | ) | |
| | ) | 2012 UT App 175 |
| Defendant and Appellant. | ) | |

-----

Third District, Salt Lake Department, 031908633
The Honorable Timothy R. Hanson

Attorneys:    Debra M. Nelson and Nisa J. Sisneros, Salt Lake City, for Appellant
              Mark L. Shurtleff and Jeffrey S. Gray, Salt Lake City, for Appellee

-----

Before Judges Davis, Thorne, and Roth.

DAVIS, Judge:

¶1     Scott C. Wadsworth appeals his convictions of sexual exploitation of a minor, a second degree felony, *see* Utah Code Ann. § 76-5a-3 (2001) (current version at *id.* § 76-5b-201 (Supp. 2011)); unlawful sexual activity with a minor, a third degree felony, *see id.* § 76-5-401 (1998) (current version at *id.* (2008)); and enticing a minor over the internet, a class A misdemeanor, *see id.* § 76-4-401 (2003) (current version at *id.* § 76-4-401(2) (2008)).[1]  Wadsworth argues that we should reverse his convictions because the trial court violated his Sixth Amendment right to counsel by refusing to permit his attorney,

---

[1]Wadsworth pleaded guilty on October 22, 2004, and the trial court denied his motion to withdraw his pleas on February 8, 2005.  However, Wadsworth did not appear for sentencing as scheduled and was not sentenced until December 4, 2009.

Barton Warren, to withdraw from representing him. He also argues that the trial court should have granted his motion to withdraw his pleas. We affirm.

## I. Motion for Withdrawal of Counsel

¶2 First, Wadsworth asserts that the trial court violated his right to be represented by counsel of his choice when it denied Warren's motion to withdraw. An attorney's motion to withdraw as counsel prior to the entry of judgment in a criminal case is subject to the approval of the court. *See* Utah R. Crim. P. 36(a)(1). Nevertheless, a trial court abuses its discretion if its denial of such a motion violates the defendant's constitutional right to counsel. *See State v. Scales*, 946 P.2d 377, 381 (Utah Ct. App. 1997).

¶3 "'[A]n element of [the Sixth Amendment right to counsel] is the right of a defendant who does not require appointed counsel to choose who will represent him.'" *State v. Barber*, 2009 UT App 91, ¶ 41, 206 P.3d 1223 (first alteration in original) (quoting *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006)). However, that right is subject to various limitations, including that "counsel must be a member of the bar, must be willing to represent the defendant, and must be free of conflicts or other ethical limitations," and that good cause must be shown when "substitution or appointment of counsel would obstruct the orderly procession of the case." *Id.* ¶¶ 42-43.

¶4 Here, Wadsworth never attempted to substitute any counsel for Warren other than Susanne Gustin-Fergis, who was unwilling and unable to represent him at trial, *see generally id.* ¶ 42. Given that Wadsworth explicitly stated that he had no desire to represent himself, the trial could not have gone forward as scheduled unless Wadsworth was represented either by Warren or by substitute counsel. *See generally State v. Pedockie*, 2006 UT 28, ¶¶ 30-39, 137 P.3d 716 (outlining the rigorous process a trial court must engage in to find a non-explicit waiver of the right to counsel). Thus, the proceedings would likely have been delayed if the trial court permitted Warren to withdraw before substitute counsel entered an appearance. Because "'[a] defendant's right to retain counsel of his choice . . . may not be insisted upon in a manner that will obstruct an orderly procedure in courts of justice,'" *see Barber*, 2009 UT App 91, ¶ 42 (omission in original) (quoting *United States v. Collins*, 920 F.2d 619, 625 (10th Cir. 1990)), the trial court did not violate that right by making the substitution of counsel conditional on new counsel's entering an appearance before Warren withdrew, *see id.* ¶ 45 ("*Assuming that incoming counsel is willing and ethically available*, a defendant has a Sixth Amendment right to fire retained counsel . . . ." (emphasis added)); *State v. Gall*,

2007 UT App 85, ¶ 12, 158 P.3d 1105 (holding that if the defendant's attorney "had been discharged as counsel, it was improper for him to represent [the d]efendant at the sentencing hearing absent some peculiar understanding between the parties *or a directive of the trial court*" (emphasis added)).  This ruling did not prevent Wadsworth from obtaining new counsel and timely moving for substitution prior to trial.  Indeed, the court's only stated reason for denying Warren's motion to withdraw was that no substitute counsel had yet entered an appearance, and the court implied that it would not hesitate to grant a motion to substitute counsel when and if a replacement attorney appeared who was ready and willing to represent Wadsworth.

¶5     Nevertheless, Wadsworth now asserts that he would have liked to have had the Legal Defender's Association (LDA) reappointed[2] as substitute counsel.  Wadsworth argues that the trial court should have "inquir[ed] into [his] desire to return to [LDA] for representation" and evaluated that option "in light of Mr. Wadsworth's termination of Mr. Warren and prior qualification [for appointed counsel]," despite the fact that Wadsworth never suggested to the trial court that he would like to have LDA reappointed.  Wadsworth's opening brief cites no authority in support of this assertion. In his reply brief, he cites authority stating that an indigent defendant's ability to retain private counsel does not necessarily negate his indigent status, *see State v. Parduhn*, 2011 UT 55, ¶ 22; that defendants who have been found indigent are entitled to public resources for their defense, *see* Utah Code Ann. § 77-32-302 (2008); and that trial courts have a duty to inquire into a defendant's expressed dissatisfaction with appointed counsel to determine whether substitution of counsel may be necessary, *see State v. Pursifell*, 746 P.2d 270, 273 (Utah Ct. App. 1987).[3]  However, none of these decisions

---

[2]The trial court initially appointed a public defender to represent Wadsworth, but a few days following the appointment, Wadsworth hired Warren to represent him instead.

[3]*State v. Pursifell*, 746 P.2d 270 (Utah Ct. App. 1987), pertains only to the trial court's duty when an indigent defendant expresses dissatisfaction with *appointed* counsel to "make some reasonable, non-suggestive efforts to determine the nature of the defendant's complaints" and whether substitution of counsel may be necessary.  *See id.* at 273.  This rule is specifically tailored to protect indigent defendants seeking substitution of appointed counsel, since such defendants do not have a right to be represented by counsel of their choice and can obtain substitute counsel only by

(continued...)

imposes a duty on the trial court to inquire into whether a defendant who has expressed a desire to replace his retained counsel with alternative retained counsel would like to have a public defender appointed after the defendant previously elected not to have the public defender represent him. Thus, even assuming that Wadsworth would have been entitled to appointed counsel had he requested it,[4] we are unconvinced that the trial court had a duty to inform him of that possibility or to inquire further into his conflict with Warren.

## II. Motion to Withdraw Plea

¶6    Wadsworth also challenges the trial court's denial of his motion to withdraw his pleas, arguing that his conflict with counsel rendered his pleas involuntary and asserting that he "only pleaded guilty because he did not believe . . . Warren would be able to represent his interests at trial and [he] did not believe he had another option with regard to his representation." He also argues that the trial court should have permitted him to withdraw his guilty pleas because it did not strictly comply with rule 11 of the Utah Rules of Criminal Procedure by ensuring that Wadsworth understood his "right to compel the attendance of defense witnesses,"[5] *see* Utah R. Crim. P. 11(e)(3).[6]

---

[3](...continued)
demonstrating good cause. *See State v. Barber*, 2009 UT App 91, ¶ 40, 206 P.3d 1223. We are not convinced that such a duty exists where a defendant expresses dissatisfaction with *retained* counsel, and such inquiry seems unnecessary given that a trial court must generally respect a defendant's right to timely dismiss retained counsel for any reason in favor of either newly retained or appointed counsel, *see id.* ¶¶ 41, 43, 50.

[4]The State asserts that Wadsworth would not have been entitled to appointed counsel because he was no longer indigent, as evidenced by his ability to retain Warren and Gustin-Furgis, as well as a third attorney to handle his motion to withdraw his plea. But because we determine that the trial court was not required to inform him of the possibility of obtaining appointed counsel under the facts and circumstances presented here, we need not consider whether Wadsworth was in fact indigent at the time Warren moved to withdraw as counsel.

[5]The parties dispute the extent to which Wadsworth preserved this issue. However, we elect to address the matter as though it were preserved. *See generally*
(continued...)

We review a district court's ruling on a motion to withdraw a guilty plea for abuse of discretion. *See State v. Lovell*, 2011 UT 36, ¶ 5, 262 P.3d 803. Nevertheless, we review "whether the [trial] court strictly complied with constitutional and procedural requirements for entry of a guilty plea . . . for correctness . . . because a strict compliance violation will almost certainly constitute an abuse of discretion." *Id.* (alteration in original) (citation and internal quotation marks omitted).

¶7 In denying Wadsworth's motion to withdraw his pleas, the trial court noted that Wadsworth had nearly three months to find another attorney between the hearing on Warren's motion to withdraw as counsel and the scheduled trial and that Wadsworth never expressed any specific dissatisfaction with Warren to the trial court either at the time Warren moved to withdraw as counsel or at the time of the plea hearing, despite numerous opportunities to do so. The trial court concluded that it was "unwilling to set aside an otherwise voluntary-appearing plea on the basis of unspecific allegations of dissatisfaction with one's lawyer after the plea is taken." Indeed, the record of the proceedings prior to Wadsworth's motion to withdraw his pleas contains nothing to suggest that Wadsworth had lost confidence in Warren's ability to represent him or that he felt forced to continue with Warren either for financial reasons or because he believed the trial court would not allow him time to obtain another attorney. Although Wadsworth had expressed a preference for having Gustin-Furgis represent him, he never indicated to the trial court that he had any specific concern regarding Warren's ability to represent him. Furthermore, he attested in his plea affidavit that his pleas were voluntary and that he was "satisfied with the advice and assistance of [his]

---

[5](...continued)
*Patterson v. Patterson*, 2011 UT 68, ¶ 13, 266 P.3d 828 ("Our preservation requirement is self-imposed and is therefore one of prudence rather than jurisdiction. Consequently, we exercise wide discretion when deciding whether to entertain or reject matters that are first raised on appeal.").

[6]Wadsworth also asserts that the trial court did not strictly comply with rule 11 because it failed to inquire as to "whether he was satisfied with the advice and assistance of counsel provided by Mr. Warren." We are unpersuaded by Wadsworth's attempts to characterize his dissatisfaction with counsel as either a lack of "a reasonable time to confer with counsel," *see* Utah R. Crim. P. 11(a), or an involuntary waiver of the right to counsel, *see id.* R. 11(e)(1). Thus, we do not further analyze this aspect of Wadsworth's rule 11 argument.

attorney." In light of these circumstances, we do not consider the trial court's denial of Wadsworth's motion to withdraw his pleas to have been an abuse of its discretion.

¶8 The trial court was also correct in determining that it had strictly complied with rule 11(e). The trial court has the burden of ensuring strict compliance with the Constitution and rule 11(e) of the Utah Rules of Criminal Procedure when a guilty plea is entered. *See State v. Visser*, 2000 UT 88, ¶ 11, 22 P.3d 1242; *State v. Gibbons*, 740 P.2d 1309, 1312 (Utah 1987). Strict compliance may be accomplished either by "'questioning . . . the defendant on the record'" or by use of "a plea affidavit, 'after the court has established that the defendant has read, understood, and acknowledged the contents of the statement.'" *State v. Corwell*, 2005 UT 28, ¶ 12, 114 P.3d 569 (quoting Utah R. Crim. P. 11(e)). Thus, so long as "the record adequately supports the district court's conclusion that the defendant had a conceptual understanding of each of the elements of rule 11(e)," the trial court need not personally discuss every element of rule 11(e) with the defendant. *Id.* ¶ 18; *see also State v. Alexander*, 2012 UT 27, ¶¶ 23-25 (explaining that while the trial court's compliance with rule 11 "forecloses many potential arguments that the defendant's plea was not knowingly and voluntarily made," and while "determining whether the district court complied with rule 11 during the plea hearing may be an appropriate step in evaluating whether the defendant's plea was knowing and voluntary," a trial court's failure to comply with rule 11 does not necessarily render a plea unknowing or involuntary where the defendant fails to "show either that he did not in fact understand the nature of the constitutional protections that he was waiving by pleading guilty, or that he had such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt" (internal quotation marks omitted)).

¶9 In Wadsworth's plea affidavit, he acknowledged that he understood he was giving up a number of rights by pleading guilty, including the right to compel witnesses in his defense. The trial court asked Warren if he had discussed the affidavit with Wadsworth and if he believed Wadsworth understood the affidavit, to which Warren replied in the affirmative. The trial court then discussed most of the rights addressed in the affidavit with Wadsworth in detail, asking if he understood and desired to waive those rights, but did not specifically discuss with Wadsworth his right to compel witnesses. Finally, the trial court asked Wadsworth, "[Is there a]nything you've read about in the statements in front of you that you do not understand," to which Wadsworth replied, "No, I understand them." Given that the affidavit informed Wadsworth of his right to compel witnesses and that both Wadsworth and his attorney

confirmed Wadsworth's understanding of the affidavit, we conclude that the record supports the trial court's determination that Wadsworth had a conceptual understanding of his right to compel witnesses.[7] *Cf. Corwell*, 2005 UT 28, ¶ 21 (determining that the trial court strictly complied with rule 11(e), despite failing to discuss the defendant's limited right of appeal with her during the plea colloquy, because the affidavit adequately described the right, the affidavit was incorporated into the record, and the trial court inquired as to whether the defendant had read and understood the affidavit).

¶10    Because we determine that the trial court was not required to permit Warren to withdraw before substitute counsel submitted an appearance, we conclude that the trial court did not infringe on Wadsworth's Sixth Amendment right to be represented by counsel of his choice. Furthermore, we conclude that the trial court did not abuse its discretion by denying Wadsworth's motion to withdraw his guilty pleas. Therefore, we affirm.

_____
James Z. Davis, Judge

-----

¶11    WE CONCUR:

_____
William A. Thorne Jr., Judge

_____
Stephen L. Roth, Judge

---

[7]We also observe that Wadsworth has made no argument that he did not, in fact, have a conceptual understanding of his right to compel witnesses. *See generally State v. Alexander*, 2012 UT 27, ¶ 23.